IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBORAH ZIELINSKI, individually and as trustee for next-of-kin of ROBERT ZIELINSKI, deceased**,<br><br>*Plaintiff,*<br><br>v.<br><br>**MEGA MANUFACTURING, INC., et al.**,<br><br>*Defendants.* | **Case No. 2:18-cv-05113-JDW** |

### MEMORANDUM

On October 16, 2017, tragedy struck Brian Zielinski. He died in a workplace accident when the table he was using to store metal sheets upended. The sheets fell on him and killed him. Mr. Zielinski's wife understandably wants to hold someone to account for his death. But her claims in this case seek to assign blame in the wrong place. She has sued the manufacturer of the machinery, Mega Manufacturing, Inc., and the manufacturer of the table that tipped over, Econo Lift Ltd. But Mrs. Zielinski has not demonstrated that the table was defective, and she has not even opposed Econo Lift's summary judgment motion. Instead, she contends that Mega is liable—not for any injury caused by its own product—but because it failed to warn her husband about the use of a table in connection with his work. Unfortunately, Mrs. Zielinski cannot hold Mega liable for failing to warn about a product it did not manufacture, sell, or supply. The Court will grant Mega's and Econo Lift's summary judgment motions.

## I.    BACKGROUND

### A.    The Accident

Mr. Zielinksi worked as a machine operator at a U-Haul Falls Manufacturing Facility. On October 16, 2017, he died in a workplace accident while he was operating a Whitney 3400 XP machine to punch and/or stamp sheet metal. Mega manufactured the Whitney machine. The machine was fitted with an optional piece of equipment known as the "PartHANDLER-II." The PartHANDLER-II picks up raw metal sheets using magnets and places them on the machine to be stamped and/or punched. The PartHANDLER-II can also remove the finished sheets from the machine and load them onto a nearby table.

When U-Haul purchased the Whitney machine, Mega informed it, "Customer must supply tables or material handling devices for raw material and finished parts. [Mega] will supply the necessary information to build these tables." (ECF No. 54-7.) Mega prepared engineering drawings for U-Haul that provided specifications to guide the design and construction of a table. But it did not build the table, certify the table, or otherwise take responsibility for the table. U-Haul bought a scissor-lift table from Econo Lift that was consistent with the specifications that Mega provided.

Econo Lift's specifications called for U-Haul to anchor the table to the floor. (ECF No. 56-6 at 4.) Econo Lift's table also included a warning that read, "PLACE LOAD ON CENTER OF TABLE." (ECF No. 56-5.) It also stated in the owners' manual, "Position load, so it will be centered." (ECF No. 56-6 at 6.) U-Haul did not follow Econo Lift's instructions. It

modified the table by welding four caster wheels to the bottom frame rather than anchoring it to the floor and by welding extensions to each side of the table. U-Haul's modifications covered the warning label on the table. Although Mega trained U-Haul employees on the Whitney machine's use and serviced the Whitney machine, there is no evidence that Mega or Econo Lift authorized, or even evaluated, those modifications to the table.

Though the PartHANDLER-II is designed to load and unload metal sheets from the Whitney machine, Mr. Zielinski was not using it at the time of the accident. He was loading and unloading the metal sheets manually and using the scissor-lift table to stack both raw sheet metal and the finished product. At some point, when Mr. Zielinski was transferring finished metal sheets from the Whitney machine onto the scissor-lift table, the table upended, causing the sheets to fall on top of Mr. Zielinski, killing him. There is no evidence before the Court about what caused the table to upend.

**B.    Procedural History**

Deborah Zielinski, Mr. Zielinski's wife, brought wrongful death and survival actions against Mega, Econo Lift, and Janicke Machinery, Inc. Mrs. Zielinski dismissed the claims against Janicke. She still asserts claims against Mega and Econo Lift for strict liability and negligence. On February 21, 2020, Mrs. Zielinski served an expert report from Eric Van Iderstine. In his report, Mr. Van Iderstine explains that a video of the accident shows Mr. Zielinski loading and unloading sheet metal from the Econo Lift table, the table tipping,

and materials sliding off the table, which allowed the table to fall back down. (ECF No. 53-6 at 4.) That report did not assign blame to either Econo Lift or Mega. On May 15, 2020, Mr. Van Iderstine issued a supplemental report in which he concludes that the Whitney machine was defective and dangerous as installed because it had "inadequate instructions and warning regarding raw material tables that were required for machine operation." (ECF No. 55-5 at 6.)

Both defendants have moved for summary judgment on each of the claims. Mrs. Zielinski did not respond to Econo Lift's motion, but she did oppose Mega's motion. Both motions are ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted).  In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372,

378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

## III. DISCUSSION

### A. Claims Against Mega

#### 1. Strict liability

Under Pennsylvania law, "a plaintiff may recover under a theory of strict liability if his or her injury was caused by a product in 'a defective condition unreasonably dangerous to the user or consumer.'" *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 576 (E.D. Pa. 2019) (quoting Restatement (Second) Torts § 402A). To prevail, the plaintiff must establish: "(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands." *Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 881 (3d Cir. 1998) (citing *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997)). "[A] plaintiff may establish a 'defective condition' … by showing that the product suffered from a design defect, failure-to-warn defect, or manufacturing defect." *Rosenberg*, 387 F. Supp. 3d at 576 (citation omitted). In a failure-to-warn case, whether the warning was adequate is a question of law for the Court to resolve. *See Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990). Mrs. Zielinski's claim against Mega fails because

she has not established that a product that Mega manufactured was defective or that any defect proximately caused her husband's injuries.

First, under Pennsylvania law, "a company that neither manufactured nor supplied the defective product is not liable under a theory of strict liability or failure to warn." *Callender v. Brighton Mach. Co.*, No. 755 WDA 2013, 2014 WL 10575351, at *8 (Pa. Super. Ct. Sept. 17, 2014) (citation omitted); *see also Schaffner v. Aesys Techs., LLC*, No. 1901 EDA 2008, 2010 WL 605275, at *5 (Pa. Super. Ct. Jan. 21, 2010). In *Toth v. Econ. Forms Corp.*, 571 A.2d 420, 423 (Pa. Super. Ct. 1990), the Superior Court held that the manufacturer of a metal scaffolding system did not have duty to warn about the dangers of using wooden planks on the scaffolding because the manufacturer did not supply the planking. Likewise, in *Mangabat v. Sears Roebuck & Co.*, No. 92-cv-1742, 1992 WL 245881 (E.D. Pa. Sept. 18, 1992), the court granted summary judgment in favor of a hedge trimmer manufacturer on a failure-to-warn claim where the plaintiff was struck by the metal prongs of an extension cord that the defendant did not manufacture but which the plaintiff attached to its product.

Like those cases, Mega's product, the Whitney machine, did not injure Mr. Zielinski. Arguably, the scissor-life table caused his injuries when it tipped, but Mega did not manufacture, supply, sell, or even recommend that table. Pennsylvania law does not hold Mega strictly liable for failure to warn under those circumstances. The fact that Mega provided U-Haul with specifications for the size of the table does not change this fact. The

specifications did not recommend a specific table, nor did they expressly or impliedly approve the Econo Lift table, or even a scissor-lift table more generally. Mega did not have a duty to warn just because it spelled-out the size of a table that would make the PartHANDLER-II work. In any event, and contrary to Mrs. Zielinski's assertions, Mega does not require its customers to utilize materials tables. Indeed, customers can stack materials on the floor (ECF No. 55-1 at 45:13-24) or transfer materials directly to or from a forklift (*Id.* at 93:5-23).

Second, Mrs. Zielinski has proffered no evidence that the alleged defect—*i.e.*, the lack of a warning—was the proximate cause of Mr. Zielinski's death. *See, e.g.*, *Dolby v. Ziegler Tire & Supply Co.*, No. 694 WDA 2016, 2017 WL 781650, at *5 (Pa. Super. Ct. Feb. 28, 2017). The Court has found no evidence in the record about what caused the scissor-lift table to upend. The Court cannot discern whether the table upended due to some risk inherent to using the table. Indeed, U-Haul's decision to weld casters onto the table rather than anchor it to the ground, and its decision to weld extensions to the sides and therefore alter the center of gravity, is just as likely to have caused the table to tip. Without any evidence, Mrs. Zielinski cannot establish that the existence of a warning would have caused her husband to act differently than he did. That failure dooms her failure-to-warn claim. *See Powell v. J.T. Posey Co.*, 766 F.2d 131, 133 (3d Cir. 1985).

Because there is no evidence of causation, Mrs. Zielinski cannot rely on Mr. Van Iderstine's opinion to save her claim. Mr. Van Iderstine opines that it "would have been

appropriate to provide instructions associated with how to properly interface raw material tables with the Whitney machine as well as warnings associated with dangers/hazards that were foreseeable when sheetmetal/plates were moved between raw material tables and the Whitney machine." (ECF No. 55-5 at 4.) But neither Mr. Van Iderstine's report nor any other evidence establishes that the interface of raw materials with the Whitney machine caused the accident at issue. Nor does he explain how a warning would have made any difference here.

### 2. **Negligence**

Because "the standard for establishing a [strict] liability claim was specifically designed to be more easily satisfied than that for a [negligence] claim[,]" *Schwartz v. Abex Corp.*, 106 F. Supp. 3d 626, 643 (E.D. Pa. 2015) (citing *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 364, 401 (Pa. 2014)), it is not surprising that Mrs. Zielinski's negligence claims fair no better. "In Pennsylvania, a plaintiff complaining of negligence must establish that (i) the defendant has a legal duty to conform to a certain standard of care to prevent unreasonable risks to the plaintiff, (ii) the defendant's conduct breached that duty, (iii) the breach caused an injury to the plaintiff, and (iv) the injury resulted in actual losses or damages." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 227 (3d Cir. 2020) (citations omitted).

Mrs. Zielinski's remaining claim for negligence is based on Mega's alleged failure to warn about the dangers of using the scissor-lift table that a different manufacturer—

8

Econo Lift—made. Because Mega had no duty to warn about the use of a table it did not manufacture, supply, or sell, Mrs. Zielinski's negligence claim fails for the same reason she cannot maintain her strict liability claim against Mega. *See Kurzinsky v. Petzl Am., Inc.*, 794 F. App'x 187, 191 (3d Cir. 2019) (citations omitted); *Mangabat*, 1992 WL 245881 at *4 ("[U]nder Pennsylvania law ... the manufacturer or supplier of one product cannot be held liable for an injury caused by another product.").

Even if Mega owed a duty to Mr. Zielinski to warn about loading and unloading sheet metal onto a materials table in connection with operation of the Whitney machine, Mrs. Zielinski cannot establish that the breach of that duty—*i.e.*, the lack of a warning— caused her husband's death. Indeed, there is no evidence in the record that demonstrates that a warning would have led Mr. Zielinski to act differently. While it may be true that Mr. Zielinski would be alive today if he were not using the Whitney machine on the day he died, that argument does not save the negligence claim against Mega. First, but-for causation is not enough. Mrs. Zielinski must establish that Mega's failure to warn Mr. Zielinski was the proximate cause of his death. She has not done that. Second, "under Pennsylvania law a product cannot be the proximate cause of an injury caused by another product[.]" *Mangabat*, 1992 WL 245881 at *4. Here, that means that Mega's product cannot have been the proximate cause of a death that the Econo Lift table caused, even if Mrs. Zielinski had some proof that the table caused the death.

### B. **Claims Against Econo Lift**

Mrs. Zielinski did not respond to Econo Lift's motion, so the Court treats the facts in Econo Lift's Motion as undisputed. *See* Fed. R. Civ. P. 56(e)(2). Those facts establish that Econo Lift did not manufacture the scissor-lift table with casters or with extensions on its sides. Nor did Econo Lift approve of those changes. Those facts rebut any claim for strict liability. Even if the table caused Mr. Zielinski's death, it was not the table that Econo Lift sold to U-Haul. The Court cannot determine whether those modifications caused the accident, or whether the table as sold did. The same is true with Mrs. Zielinski's negligence claim. Because U-Haul modified the scissor table, Mrs. Zielinski has no evidence that Econo Lift breached a duty to Mr. Zielinski or that it was the proximate cause of Mr. Zielinksi's injury.

In any event, the facts establish that Econo Lift did provide a warning about the use of the table. There was a warning on the table, which U-Haul's modifications covered. There was also a warning in the owner's manual. Both warnings were intended to mitigate the risk that the table would tip. Econo Lift could not have predicted that someone would cover its warning, and nothing in the record suggests that its warning was inadequate.

## IV. CONCLUSION

The Court sympathizes with Mrs. Zielinski. She lost her husband in an accident that might have been prevented. But she has no evidence that Mega or Econo Lift are the ones that could have, or should have, prevented it. Because she cannot establish essential

elements of either of her claims against Mega and Econo Lift, the Court must grant their summary judgment motions. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.
United States District Judge

October 9, 2020